UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE BIEGAJSKI,

        Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                       Case No. 1:15-cv-1037

PRIORITY HEALTH, et al.,

        Defendants.

_____/

**OPINION**

This matter is before the Court on Defendant Priority Health's Motion for Summary Judgment, (ECF No. 33), Defendant Farm Bureau's Motion to Decline Supplemental Jurisdiction, (ECF No. 39), Defendant Farm Bureau's Motion for Summary Judgment, (ECF No. 48), Plaintiff's Motion for Summary Judgment as to Defendant Priority Health, (ECF No. 49), and Plaintiff's Motion for Summary Judgment as to Defendant Farm Bureau, (ECF No. 50).

On March 7, 2016, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (ECF No. 23). For the reasons discussed herein, Defendant Priority Health's Motion for Summary Judgment, (ECF No. 33), is **denied**; Defendant Farm Bureau's Motion to Decline Supplemental Jurisdiction, (ECF No. 39), is **denied**; Defendant Farm Bureau's Motion for Summary Judgment, (ECF No. 48), is **granted**; Plaintiff's Motion for Summary Judgment as to Defendant Priority Health, (ECF No. 49), is **granted**; Plaintiff's Motion for Summary Judgment as to Defendant Farm Bureau, (ECF No. 50), is **denied**; and this case is **terminated**.

**BACKGROUND**

On or about May 27, 2013, Arthur Biegajski was involved in an automobile accident in Toledo, Ohio. As a result of this accident, Biegajski was seriously injured and received significant medical treatment. At the time of this accident, Biegajski had no-fault automobile insurance through Farm Bureau and medical insurance through Priority Health. In light of the coordination of benefits provisions in each of Biegajski's policies, and the insurers interpretation thereof, Priority Health assumed primary responsibility for the payment of Biegajski's medical bills, eventually paying more than three hundred thousand dollars ($300,000.00) in medical bills on Biegajski's behalf.

Following Biegajski's passing, from causes unrelated to the aforementioned accident, Biegajski's estate (hereinafter Biegajski) subsequently pursued in Ohio state court a civil tort action against the other driver involved in the subject accident. Biegajski settled this lawsuit for payment of six hundred thousand dollars ($600,000.00). Priority Health claimed that it was entitled to recover from this settlement the amounts it paid for Biegajski's medical care following his accident. In light of Priority Health's claim to reimbursement, Biegajski placed in trust a portion of the settlement proceeds equal to the amount claimed by Priority Health. Biegajski soon thereafter initiated the present action seeking a declaration of its rights to the disputed amount. Priority Health subsequently asserted a counterclaim alleging entitlement to the disputed amount. Biegajski also seeks a declaration of rights vis-a-vis Farm Bureau and its obligation, if any, to pay the medical expenses incurred by Biegajski following his accident. The parties have now filed the various motions described above.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to

judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

The primary dispute in this matter, between Priority Health and Arthur Biegajski's Estate, is whether Priority Health is entitled to reimbursement of the amounts it paid for Biegajski's care following his accident.  Secondarily, Biegajski's Estate asserts against Farm Bureau the claim

that, in the event Priority Health is entitled to reimbursement of the amounts it paid for Biegajski's care, Farm Bureau is obligated to reimburse Biegajski's Estate. As discussed herein, the Court concludes that: (1) Priority Health is not entitled to reimbursement of the amounts it paid for Biegajski's medical care and that, therefore, (2) Farm Bureau has no obligation to pay or reimburse Biegajski's Estate.

I. **ERISA Preemption**

Priority Health asserts that the health plan pursuant to which it paid Biegajski's medical bills is a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), an assertion which no other party disputes.

Federal law provides that ERISA "shall supercede any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA contains another provision, however, which saves from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A); *see also, Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 333 (2003). This provision is known as the ERISA "saving clause." *Miller*, 538 U.S. at 333. The saving clause must be considered in conjunction with the "deemer clause" which provides that a self-funded ERISA plan, as opposed to a plan which provides coverage through the purchase of insurance (i.e., an insured plan), is exempt from state laws which regulate insurance. *See FMC Corp. v. Holliday*, 498 U.S. 52, 60-61 (1990) (citing 29 U.S.C. § 1144(b)(2)(B).

Priority Health concedes that the plan in question is not a self-funded plan. Thus, the deemer clause is presently inapplicable. Accordingly, the Priority Health plan at issue in this matter is subject to Michigan laws regulating insurance. *See, e.g., Horrell v. CEC Entertainment, Inc.*,

2011 WL 4954031 at *4 (W.D. Mich., Oct. 18, 2011).  Priority Health does not dispute this particular conclusion, but, as discussed below, instead advances several arguments to avoid the application in the present circumstance of Michigan regulatory law.

II.        **Priority Health was Biegajski's Primary Insurer**

Before addressing whether the Priority Health plan in question is subject to any Michigan regulatory laws, the Court must first address the parties' dispute regarding whether Priority Health or Farm Bureau was primarily responsible to make payment for Biegajski's medical expenses following his automobile accident.  Priority Health and Farm Bureau both argue that Priority Health was properly considered Biegajski's primary insurer in this matter whereas Biegajski asserts that Farm Bureau was Biegajski's primary insurer.  Biegajski further argues that because Farm Bureau was primarily responsible for paying Biegajski's medical bills, Priority Health's decision to make payment for such was mistaken and does not qualify for reimbursement.

Under Michigan's no-fault insurance scheme, motor vehicle insurers must pay personal protection benefits, including all reasonable medical expenses, for bodily injury arising from the ownership or use of a motor vehicle.  *See* Mich. Comp. Laws §§ 500.3101, 500.3105, 500.3107; *Horrell*, 2011 WL 4954031 at *4.  Michigan law contains certain exceptions to this requirement, one of which is where an insured's no-fault and health insurance policies both contain coordination of benefits provisions.  *See* Mich. Comp Laws 500.3109a ("[a]n insurer providing personal protection insurance benefits under this chapter may offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured").  In such a circumstance, Michigan law provides that the insured's health care

insurer is primarily liable to pay medical benefits. *See Horrell*, 2011 WL 4954031 at *4 (interpreting Michigan law). Section 3109a has been held to "regulate insurance" and, therefore, avoid ERISA preemption. *See, e.g., Progressive Michigan Ins. Co. v. United Wisconsin Life Ins. Co.*, 84 F.Supp.2d 848, 851 (E.D. Mich. 2000).

Priority Health asserts that because Biegajski's automobile and health insurance policies both contained coordination of benefits provisions, Priority Health was primarily responsible to pay Biegajski's medical bills. Biegajski does not dispute that the Priority Health plan in question contains a coordination of benefits provision. (ECF No. 34-2 at PageID.371-74). Biegajski instead argues that the Farm Bureau automobile insurance policy did not coordinate benefits with his Priority Health policy, thus making Farm Bureau primarily responsible for his medical bills. As discussed below, Biegajski's argument is based upon a faulty interpretation of the relevant automobile insurance policy.

Biegajski's Farm Bureau policy contained a coordination of benefits provision that provided, in relevant part, that "[i]f 'Excess Medical Payments' is shown in the Declarations, it is agreed that all other insurance, service, benefit or reimbursement plans available to you or a family member are your primary sources of protection."[1] (ECF No. 34-3 at PageID.399). Biegajski argues that "Excess Medical Payments" is *not* "shown in the Declarations." A copy of the Declarations page has been submitted to the Court. (ECF No. 34-3 at PageID.387). The Declarations page provides that "insurance afforded on each vehicle is limited to the specific coverages and liability limits for which a premium is indicated below." The subsequent section, "Coverages and Limits of Liability," contains a line reading "Excess Medical Payments." However, next to this entry is a "x"

---

[1] While this provision is contained in a "sample" policy submitted by Priority Health, Biegajski does not argue that his actual policy differed in any way.

rather than a premium amount which Biegajski argues demonstrates that the policy did not contain coverage for "Excess Medical Payments" and, therefore, did not effect a valid coordination of benefits.

Farm Bureau has submitted an affidavit executed by Suzanne Reed, its Manager of Property and Casualty Underwriting. (ECF No. 57 at PageID.731-32). According to Reed, because coverage for "Excess Medical Payments" is part of the Personal Injury Protection coverage for which a premium amount was indicated, a separate premium amount for that specific portion of coverage was not appropriate. Thus, the "x" signified that Biegajski did, in fact, have "Excess Medical Payments" coverage. Reed further asserts that had Biegajski opted instead to have Farm Bureau provide primary medical coverage, his premium would have increased significantly which is consistent with the statutory scheme which permits this type of coordination of benefits. *See* Mich. Comp Laws 500.3109a ("[a]n insurer providing personal protection insurance benefits under this chapter may offer, *at appropriately reduced premium rates*, deductibles and exclusions reasonably related to other health and accident coverage on the insured") (emphasis added). Biegajski offers no evidence to the contrary.

The Court concludes, therefore, that Biegajski did, in fact, coordinate personal injury protection benefits between his Priority Health and Farm Bureau policies. Accordingly, the Court finds that Priority Health was primarily responsible for payment of Biegajski's medical bills following the accident in question. In light of this conclusion, Farm Bureau's motion to decline supplemental jurisdiction is denied, Farm Bureau's motion for summary judgment is granted, and Biegajski's motion for summary judgment against Farm Bureau is denied.

**III.      Priority Health Plan**

     A.      Reimbursement Provision

Having established that it properly paid Biegajski's medical bills following his accident, Priority Health argues that it is entitled to reimbursement pursuant to the Subrogation and Reimbursement provision in its health plan. Specifically, this provision provides as follows:

     G.      Subrogation and Reimbursement

When you receive payment for Covered Services, you assign (or transfer) to us all of your rights of recovery from any third party, including your Employer. These rights of recovery include recoveries from tort-feasors, underinsured/uninsured motorist coverage, Worker's Compensation, other substitute coverage, any other group or non-group policy of insurance providing health and/or accident coverage, including automobile insurance. Additionally, we have a right:

(1)     to subrogation. This means that we can stand in your or your estate's shoes and sue a third party directly for an Illness or Injury that we Covered.

(2)     of reimbursement. This means that we have a right to be reimbursed out of any recoveries you or your estate receives in the future or may have received in the past from third parties relating to your Illness or Injury that we Covered.

(3)     to pursue any other right of recovery, whether based in tort, contract, or any other body of law.

This assignment is to the fullest extent permitted by law. Our rights of recovery shall not be limited to recoveries from third parties designated for medical expenses, but shall extend to any and all recovered amounts. In the case of both subrogation and reimbursement, we will be permitted to pursue a recovery amount equal to the total amount paid by us, or the cost of services provided by us, as applicable, plus reasonable collection costs, because of an Illness or Injury for which you (or your estate or guardian) have or has a cause of action. You are required, when requested, to acknowledge our rights of recovery in writing. Our right of recovery,

however, is not dependent upon this acknowledgement. Tell us immediately, in writing, about any situation that might let us invoke our rights under this section.

You are expected to cooperate with us to help protect our rights under this section. You agree that these rights will be considered the first priority claim with a first priority lien of 100% of the proceeds of any full or partial recovery against anyone else. Our claim will be paid before any other claims are paid, whether or not you have recovered your total amount of damages. We must be reimbursed in full before any amounts (including attorney's fees incurred by you or your guardian or estate) are deducted from the policy proceeds, judgment or settlement.

Neither you, nor anyone acting for you, will do anything to harm our rights under this section. If you settle a claim or action against a third party, you will be considered to have been made whole by the settlement. We expressively reject the application of any "make whole," common fund or other claim or defense to Priority Health's subrogation and reimbursement rights. We will then have the right to immediately collect the present value of our right to reimbursement, as described above. Our claim will be the first priority claim from the settlement fund. If you receive any proceeds of settlement or judgment, and if we have a right of reimbursement in those proceeds, you must hold those proceeds in trust for us. Transfer of such funds to a third party does not defeat our right of reimbursement if the funds were or are intended for your benefit. We can recover from you expenses we incur because you failed to cooperate in enforcing our rights under this section.

For purposes of this subsection 13.G, the term "you" includes you and any person claiming through or on behalf of you, including relatives, heirs, assigns and successors.

(ECF No. 34-2 at PageID.374).

      B.     Section 3116 of the Michigan No-Fault Act

Biegajski counters that Michigan law, specifically the limitations on reimbursement and subrogation articulated at Mich. Comp. Laws § 500.3116, precludes Priority Health's

reimbursement claim. Section 3116 provides, in relevant part, that "[a] subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury." Mich. Comp. Laws § 500.3116(1). There exists an exception to this general rule where "recovery is realized upon a tort claim arising from an accident occurring outside this state," but only "to the extent that recovery is realized for noneconomic loss. . .or for allowable expenses, work loss, and survivor's loss. . .in excess of the amount recovered by the claimant from his or her insurer." Mich. Comp. Laws § 500.3116(2), (4).

In sum, because Biegajski recovered amounts in tort as a result of an out-of-state accident, Priority Health is not automatically precluded from reimbursement, but it can only obtain reimbursement to the extent Biegajski was compensated for damages for which personal protection insurance benefits (i.e., medical benefits) were paid. *See, e.g., Matthews v. Republic Western Ins. Co.*, 2006 WL 510512 at *4 (Mich. Ct. App., Mar. 2, 2006) ("an insurer is prohibited from obtaining reimbursement from the insured's third-party tort recovery for noneconomic loss"); *Keys v. Travelers Ins. Co.*, 335 N.W.2d 100, 101 (Mich. Ct. App. 1983) (same). Priority Health bears the burden to establish that the amounts recovered by Biegajski's estate in the Ohio tort action represented compensation for damages for which medical benefits were paid. *See, e.g., Matthews*, 2006 WL 510512 at *4; *Keys*, 335 N.W.2d at 101. Priority Health cannot, however, meet its burden.

The settlement agreement which resolved the Ohio tort case does not indicate whether the amounts paid to Biegajski were for economic losses (i.e., medical bills) or non-economic losses. (ECF No. 34-5 at PageID.424-28). This is fatal to Priority Health's claim. Under Michigan law, "[w]hen a settlement agreement fails to characterize the losses covered, a presumption applies that the compensation for the injured party was for noneconomic damages."

*Matthews*, 2006 WL 510512 at *4 (citing *Keys*, 335 N.W.2d at 101). Priority Health has presented no evidence to overcome this presumption. The Court concludes, therefore, that § 3116 of the Michigan No-Fault Act precludes Priority Health's reimbursement claim.[2]

        C.      Section 3116 Governs Priority Health's Reimbursement Claim

In an attempt to avoid application of § 3116, Priority Health offers several arguments none of which are persuasive. Priority Health first argues that because § 3116 does not regulate insurance, it is preempted by federal law. In *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), the Court examined the relationship between an anti-subrogation measure passed by the State of Pennsylvania and the ERISA deemer clause. In the course of its analysis, the Court observed that "[t]here is no dispute that the Pennsylvania law falls within ERISA's insurance saving clause" because it "regulates insurance." *Id.* at 61. As the Court stated, the measure in question "does not merely have an impact on the insurance industry; it is aimed at it." *Id.* While the specifics of § 3116 differ from the measure at issue in *FMC*, § 3116 is similar in that it likewise "is aimed at" the insurance industry and seeks to regulate the ability of insurance providers to obtain reimbursement of amounts recovered in tort by their insureds. Subsequent courts have found that other state law anti-reimbursement measures were likewise not subject to ERISA preemption. *See, e.g., Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 572-74 (6th Cir. 2001) (finding that a California law which precluded health care providers from obtaining reimbursement from amounts recovered in medical

---

[2] Priority Health asserts in an affidavit that "[a]t all relevant times, Priority Health notified Biegajski that all payments made by Priority Health on his behalf were subject to Priority Health's right of subrogation and reimbursement." (ECF No. 34-1 at PageID.324). Priority Health has not alleged that it was unaware of the Ohio tort action asserted by Biegajski and the fact that Priority Health asserted immediate entitlement to reimbursement upon execution of the settlement thereof suggests that Priority Health was timely made aware of the tort action. Thus, it certainly appears that Priority Health, pursuant to its right of subrogation, could have participated in the Ohio tort action and secured a settlement agreement more clearly articulating the extent to which (if at all) Biegajski's settlement represented payment for economic losses.

malpractice actions regulated insurance and, therefore, was not preempted by ERISA). More recently, another Court in this district concluded that § 3116 "is a law that 'regulates insurance' for purposes of the [ERISA] savings clause." *Horrell*, 2011 WL 4954031 at *5. The Court agrees and likewise concludes that § 3116 regulates insurance and is, therefore, not preempted by ERISA.

Priority Health next argues that even if § 3116 is not preempted, it is presently inapplicable because § 3116 "is targeted only at no-fault automobile insurers, not at health insurers." The language of the statute provides no support for this argument. The statute is not directed at a particular type of insurance provider, but instead simply and straightforwardly precludes "[a] subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury." Moreover, Michigan law does not support Priority Health's position.

In *Great American Ins. Co. v. Queen*, 300 N.W.2d 895 (Mich. 1980), the court faced the question whether "an employer's or insurer's right under the workers' compensation act to be reimbursed out of any tort recovery by an employee from a third party in respect to the same injury which gave rise to the obligation to pay workers' compensation benefits is modified by the provisions of the no-fault motor vehicle liability act." *Id.* at 895. The pertinent facts of this case were summarized by the court as follows:

> Queen was injured in a motor vehicle accident in the course of his employment on January 12, 1976. Great American Insurance Company paid him $4,567 in workers' compensation benefits. Queen claimed benefits from his employer's no-fault insurer. The no-fault insurer subtracted the amounts paid under the workers' compensation act from the benefits otherwise owing under the no-fault act.

> Queen then sought to recover from the tortfeasors as permitted by § 3135 of the no-fault act. His claim was settled for $18,500. This sum was paid without notice to Great American.
>
> Great American then brought this cause against Queen and the third-party tortfeasors claiming a lien on the settlement proceeds pursuant to § 827 of the workers' compensation act.

*Id.* at 897.

While Great American's claim for reimbursement was expressly authorized by the Workers' Compensation Act, the court nevertheless rejected Great American's claim on the ground that "the Legislature intended the workers' compensation carrier to substitute for the no-fault insurer to the extent that workers' compensation benefits substitute for no-fault benefits otherwise payable." *Id.* at 901. Accordingly, the court concluded that because Great American was seeking "reimbursement for medical treatment which would be compensable under the no-fault act," it had "no right to reimbursement for such payments." *Id.* Thus, as the Honorable Joseph G. Scoville recently observed, "*Queen* squarely holds that a government-required benefit plan that pays medical bills which would otherwise be covered by the no-fault carrier stands in the shoes of the no-fault carrier and is subject to the statutory restrictions against reimbursement from the proceeds of a tort recovery." *Horrell*, 2011 WL 4954031 at *8.

The rationale that a non-no-fault insurer stands in the shoes of a no-fault provider when paying benefits compensable under the No-Fault Act was subsequently extended to health insurance providers. *See Great Lakes Am. Life Ins. Co. v. Citizens Ins. Co.*, 479 N.W.2d 20 (Mich. Ct. App. 1991). In *Great Lakes*, Cruz Piaz was seriously injured in an automobile accident. *Id.* at 21. At the time of the accident Piaz was covered by both a no-fault motor vehicle policy and a group health insurance policy provided by Great Lakes. Pursuant to a coordination of benefits provision,

Great Lakes was primarily liable for Piaz's medical expenses. *Id.* After Piaz later obtained a tort settlement against one of the drivers involved in his accident, Great Lakes sought to enforce its contractual right of reimbursement. *Id.* at 21-22. The court rejected Great Lakes' claim:

> We hold that the instant case is controlled by *Great American Ins. Co. v. Queen*. The medical insurance benefits paid by plaintiff, Great Lakes American Life Insurance Company, substitute for no-fault benefits otherwise payable. Under such circumstances, the contractual reimbursement rights of Great Lakes Insurance are subject to the limitations of § 3116 of the no-fault act and are therefore unenforceable.

*Id.* at 25.

This interpretation of the *Queen* and *Great Lakes* decisions is consistent with the *Harrell* court's analysis of a similar type of claim:

> Read together, *Queen* and *Great Lakes* establish a principle of Michigan law designed to protect the integrity of the *Federal Kemper* rule. A person injured in an automobile accident, who would otherwise be entitled to personal protection benefits under a no-fault policy, is protected from reimbursement claims from insurers who are directed by state law to provide coverage in lieu of no-fault benefits: those insurers providing coverage pursuant to state or federal government mandate (§ 3109) and health insurers primarily liable for medical benefits pursuant to a coordination of benefits clause and the *Federal Kemper* rule (§ 3109a). In either case, the other insurer "stands in the shoes" of a no-fault carrier and is therefore subject to the restrictions set forth in § 3116 concerning rights of reimbursement.

*Horrell*, 2011 WL 4954031 at *9.

Finally, Priority Health argues that because Ohio law governed Biegajski's tort recovery, Michigan law in general, and § 3116 in particular, have no applicability in this matter. In the Ohio tort action, the parties disputed whether Michigan law or Ohio law applied. (ECF No. 34-6, Exhibits 6-8). The case was settled, however, before the choice of law dispute was addressed

or resolved. Thus, the claim by Priority Health that Ohio law governed the previous tort action is pure speculation. Moreover, this argument is a complete red herring as the relevant question is which body of law governs in the present action. The plan pursuant to which Priority Health seeks to enforce its right of reimbursement expressly states that it "is governed by Michigan law and any applicable federal law." (ECF No. 34-2 at PageID.379). Priority Health advances no argument that this provision is without effect or that Michigan law does not otherwise apply in this action. Accordingly, Priority Health's motion for summary judgment is denied and Biegajski's motion for summary judgment against Priority Health is granted.

        An Order consistent with this Opinion will enter.


Date:  January 25, 2017                                                /s/ Ellen S. Carmody
                                                                                  ELLEN S. CARMODY
                                                                                  United States Magistrate Judge